UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAVERN DOWNING

      Plaintiff,

v.                                                    Case No. 8:25-cv-2564-NHA

WAL-MART STORES EAST, LP, and
THE CITY OF WINTER HAVEN

      Defendants.

_____/

## **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Defendants Wal-Mart Stores East, LP and the City of Winter Haven move to dismiss the Second Amended Complaint. Doc. 48, 55. Plaintiff opposes the motions. Docs. 52, 56. I grant the motions to the extent that I dismiss the Second Amended Complaint. However, I offer Plaintiff a final opportunity to amend.

## I.    Background

In his five-count[1] Second Amended Complaint, Plaintiff sues Wal-Mart and Winter Haven. Doc. 33.

Plaintiff alleges that, around August 12, 2025, while shopping in a Wal-Mart store, he was seized by two Winter Haven police officers, "assisted by

---

[1] Plaintiff's Claims are numbered Count I, Count II, Count III, Count V, and Count VI, but comprise only five claims.

Wal-Mart security personnel," and taken to a back room. Doc. 33 ¶¶ 9, 10. There, Plaintiff alleges, he was informed that he was "being detained for threats and possible human sex trafficking," interrogated, and kept for two hours, before being released without charge. *Id.* ¶¶ 11-12, 14, 18.

Plaintiff alleges that, while he was being held, a shoplifting suspect "under the influence of methamphetamine, hallucinating, and panicking," "stated that Plaintiff 'looked familiar' and 'looked like one of the guys from around the homeless shelter.'" *Id.* ¶¶ 12, 13. Plaintiff suggests it was unreasonable to continue to detain Plaintiff based on this "equivocal" statement by someone who was "visibly intoxicated and unreliable." *Id.* ¶¶ 14, 19.

Additionally, Plaintiff alleges that a Winter Haven police officer contacted Plaintiff's wife and falsely informed her that Plaintiff was being investigated for sex trafficking, which caused her to suffer "an acute emotional breakdown, threaten[ ] Plaintiff's life, and experience[ ] severe psychological distress." *Id.* ¶¶ 16, 17.

Plaintiff brings claims (1) against both defendants for false imprisonment under state law, (2) against both defendants for aiding and abetting false imprisonment under state law, (3) against both defendants for violating his Fourth Amendment right against unreasonable seizure and Fourteenth Amendment right to due process and equal protection, pursuant to

42 U.S.C. § 1983, (4) against Wal-Mart for negligence under state law, and (5) against the City of Winter Haven for *Monell* liability relating to its officers' false imprisonment, pursuant to 42 U.S.C. § 1983. Doc. 33.

Defendants move to dismiss the Second Amended Complaint, arguing that it is a shotgun pleading. Doc. 48 pp. 3-4; Doc. 55 pp. 5-9. Specifically, they allege that Plaintiff's first, second, and third counts name both defendants but fail to specify which defendant took what action supporting any count. Further, Defendants assert that Plaintiff fails to state facts sufficient to support his claims. Doc. 48 pp. 4-7; Doc. 55 pp. 9-16. Wal-Mart adds that it cannot be sued under 42 U.S.C. § 1983 (Count III), because it is not a state actor. Doc. 48 pp. 5-6. Winter Haven argues that the law precludes Plaintiff's requests for punitive damages against a municipality. Doc. 55 pp. 16-17.

## II.   Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff need not include "detailed factual allegations" in the complaint, the requirement to demonstrate the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

These standards suggest a two-pronged approach for courts evaluating a motion to dismiss a complaint. *See id.* at 678–79; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, a court should "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n*, 605 F.3d at 1290. While a court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), it need not consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678. Nor should it consider "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Second, "where there are well-pleaded factual allegations, [a court should] assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290 (internal quotation marks omitted).

### III.    Analysis

####    a. Plaintiff's complaint is a shotgun pleading.

Defendants first ask the Court to dismiss Plaintiff's Second Amended Complaint as a shotgun pleading. Doc. 48 p. 3; Doc. 55 pp. 5-9. Defendants argue that the pleading improperly incorporates all facts into each count without explaining which facts support which claim. They further argue that the complaint fails to specify which Defendant took which actions, thereby attempting to "hold both Defendants collectively responsible for each other's actions." Doc. 55 p. 8.

> There are four types of "shotgun pleadings:"

> The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that . . . is . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type . . . [does] not separate[e] into a different count each cause of action or claim for relief. Fourth, and finally, there is . . . asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit has instructed that a district court "must

5

intervene . . . and order a replead[ing]" of a shotgun complaint, even if the defendant does not move for a more definite statement. *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds as recognized by Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 n.10 (11th Cir. 2018).

Defendants are correct that the Second Amended Complaint is a shotgun pleading. The first three counts, which name both Defendants, fail to specify which Defendant was responsible for which act(s) giving rise to the claim. Count Three appears to allege two separate section 1983 claims (one based on the Fourth Amendment and the other based on the Fourteenth). And, each claim incorporates the entirety of the complaint's Jurisdiction, Venue, Parties, and Facts sections. Thus, while Plaintiff provides a general overview of the facts at issue, the Court cannot decipher for all claims Plaintiff's theory as to which facts demonstrate each alleged legal violation. This deprives Defendants of the ability to meaningfully identify their alleged wrongdoing and respond with any appropriate defenses. The complaint, therefore, requires repleading.

In any repleading, Plaintiff should separate each violation of law into a separate count. And, he should concisely state, for each count, exactly what each Defendant did that violated the specific right or law at issue in that count. Plaintiff should further explain which specific facts he contends comprise each violation.

6

Plaintiff's complaint requires dismissal, because it is shotgun pleading. However, to guide any repleading, the Court discusses additional and independent bases warranting dismissal of the complaint.

b. <u>Plaintiff does not support his false imprisonment claims (Counts I and II).</u>

Defendants both argue that Plaintiff fails to plead facts sufficient to state a false imprisonment claim (Count I) and, derivatively, an aiding-and-abetting claim (Count II).[2]

To state a claim of false imprisonment, Plaintiff must plead facts showing that he was "unlawfully detained and deprived of [his] liberty, against [his] will, under circumstances that were unreasonable or unwarranted." *Hendricks v. Sheriff, Collier Cnty., Fla,* 492 Fed. Appx. 90, 94-95 (11th Cir. 2012) (citing *Mathis v. Coats,* 24 So.3d 1284, 1289 (Fla. 2d DCA 2010); *Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, 425 So. 3d 645, 661 (Fla. 2d DCA 2025) (to state a claim for false imprisonment under Florida law, a plaintiff must show: "(1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of

---

[2] Plaintiff does not cite any specific legal basis for Claims I and II. In light of the fact that Plaintiff purports to separately plead Fourth Amendment violations in Count III, the Court construes Counts I and II as attempting to bring Florida common law claims for false imprisonment, and for aiding and abetting the same.

authority'; and (4) which is unreasonable and unwarranted under the circumstances.").

Plaintiff states sufficient facts to show that he was detained for two hours against his will (although, as stated above, he does not state who took what actions to effect that 2-hour detention). However, the facts he alleges do not demonstrate that the detention was unlawful or unwarranted.

The Second Amended Complaint asserts that it would have been unreasonable to base Defendant's two-hour detention on the equivocal facts of someone who was visibly impaired. Doc. 33 ¶ 14. This may be true. However, the pleading appears to allege that an unreliable witness statement was made after Plaintiff had been detained and identified as a suspect in a sex-trafficking investigation. *See* Doc. 33 ¶¶ 10-14. In other words, Plaintiff does not address the basis for the initial seizure, who provided it, whether it was provided in good faith, and whether it would have supported continued detention, nor does Plaintiff assert the *absence* of any additional basis. And, while the allegedly unreliable witness statement was not terribly incriminatory, nor did it necessarily exculpate him, requiring his immediate release.

Without specific allegations addressing the basis of the initial arrest and detention, or denying the existence thereof, Plaintiff has not stated facts that establish the essential elements of a false imprisonment claim (Count I).

The failure to state a claim for false imprisonment is fatal to the related aiding-and-abetting claim (Count II). To state such a claim, "[i]n Florida, a plaintiff must allege: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and [abettor]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012) (citing *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.,* 917 So.2d 368, 372 (Fla. 5th DCA 2005)). Because Plaintiff does not sufficiently plead the underlying violation, the aiding-and-abetting claim is likewise deficient.

Plaintiff does not plead facts sufficient to support Count I or Count II.

 c. <u>Plaintiff does not support his civil rights claim (Count III).</u>

In Count III, Plaintiff sues both Defendants pursuant to 42 U.S.C. § 1983, for violating his Fourth and Fourteenth Amendment rights by detaining him "without probable cause" and "motivated by discriminatory profiling." Doc. 33 p. 5.

Initially, as mentioned above, to the extent Plaintiff wishes to bring claims based on two constitutional violations, he must separate them into distinct claims.

However, even construed as separate claims, Plaintiff's 1983 claims cannot go forward. "To state a claim under [§ 1983], 'a plaintiff must allege

9

that (1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law.'" *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1291 (11th Cir. 2025) (quoting *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010)). Plaintiff has not adequately pleaded violations of either of the constitutional amendments he invokes, nor has he pleaded facts supporting his allegation that Wal-Mart, a non-governmental party, acted under color of state law.

i.  Fourteenth Amendment claim

First, Plaintiff has not adequately pleaded a violation of his rights under the Fourteenth Amendment's Equal Protection Clause. Plaintiff claims Defendants were "motivated by discriminatory profiling." Doc. 33 p. 5.

The Fourteenth Amendment's Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Equal Protection challenges are often brought against the very existence of a law, but "[t]he unequal application of a facially neutral statute may [also] violate the Equal Protection Clause." *WBY, Inc. v. City of Chamblee, Georgia*, 155 F.4th 1242, 1264 (11th Cir. 2025). Courts apply heightened levels of Equal Protection scrutiny to state action that treats people differently based on "suspect classifications," such as race, national origin, and gender. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

10

Even without alleging that one of these suspect classifications was used, however, a plaintiff can challenge a state action by bringing a "class of one" equal protection claim. "A 'class of one' equal protection claim does not allege discrimination against a protected class, but rather asserts that the plaintiff 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Leib v. Hillsborough Cnty. Pub. Transp. Commn.*, 558 F.3d 1301, 1306 (11th Cir. 2009) (quoting *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1032 n. 1 (11th Cir.2008)).

Here, Plaintiff has not adequately alleged an Equal Protection claim, because he does not explain, or provide facts supporting, the theory under which he proceeds.

Perhaps Plaintiff means to plead discriminatory action based on a protected class, given that Plaintiff mentions "discriminatory profiling" in Count III. But Plaintiff does not specify in that count on what basis Defendants allegedly discriminated against him. *See* Doc. 33 ¶¶ 29-32.

Elsewhere in the complaint, Plaintiff mentions "discrimination based on race, class, or homelessness." Doc. 33 ¶ 34. The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren v. U.S.*, 517 U.S. 806, 813 (1996). But, classifications based on class or poverty are not suspect classifications. *See Schultz v. Alabama*, 42

11

F.4th 1298, 1323 (11th Cir. 2022) ("The Supreme Court has unambiguously held that discrimination against the indigent, without more, does not implicate a suspect classification. . .") (citing *Maher v. Roe*, 432 U.S. 464, 471 (1977)). Thus, if he means to show that Defendants treated him differently based on a protected class, it appears Plaintiff must plead facts showing that the state action complained of was motivated by racial discrimination. *Andre*, 148 F.4th at 1305. But Plaintiff offers no facts at all to support a conclusion that Defendants were motivated by racially discriminatory attitudes or intentions. Thus, to the extent Count III includes a racial discrimination claim, Plaintiff's pleading does not support it. *See id.* at 1305-06 (affirming the dismissal of a Fourteenth Amendment racial discrimination claim where plaintiffs failed to allege that state actors were motivated by a discriminatory purpose).

Alternatively, if Plaintiff means to allege that Defendants violated his equal protection rights by treating him differently based on his class, housed status, or any other non-suspect classification, he must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1233 (11th Cir. 2022) (discussing a "class of one" equal protection claim at the pleading stage). In such "class of one" equal protection claims, the complaint must include allegations that others who are like the plaintiff in all relevant aspects were not treated as he

12

was. *See Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another."). And, a plaintiff must affirmatively allege that the differing treatment he received had no rational, non-discriminatory explanation. *Chabad Chayil*, 48 F.4th at 1233.

Here, to the extent Plaintiff alleges in Count III that he was subject to discrimination for reasons other than a suspect classification, he has not met either prong of the two requirements to plead such claims. Plaintiff identifies no other similarly situated person who was not subject to detention and interrogation, nor does he state, even in a conclusory manner, the Defendants had no rational basis for their actions.

For these reasons, Plaintiff fails to state an equal protection claim.

ii.  Fourth Amendment claim

Second, Plaintiff does not plead facts sufficient to state a section 1983 claim for false imprisonment or unreasonable seizure.

"Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). "Probable cause exists when 'a reasonable officer could conclude that there is a substantial chance of criminal activity.'" *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) (alterations adopted)

13

(quoting *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022)). "This standard is met when 'the facts and circumstances within the officer's knowledge, [based on] reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Williamson v. Mills,* 65 F.3d 155, 158 (11th Cir. 1995)). "An arresting officer is required to conduct a reasonable investigation to establish probable cause. An officer, however, need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.'" *Id.* at 1435-36 (quoting *Tillman v. Coley,* 886 F.2d 317, 321 (11th Cir. 1989)) (citations omitted).

Separately, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citations omitted).

Notably, probable cause and reasonable suspicion are both time-sensitive inquiries. Probable cause "may . . . dissipate after an officer makes a

14

warrantless arrest" based on additional information that comes to light. *Barnett v. MacArthur,* 956 F.3d 1291, 1297 (11th Cir. 2020). "The Fourteenth Amendment Due Process Clause includes the 'right to be free from continued detention after it was or should have been known that the detainee was entitled to release.'" *Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir. 2009) (quoting *Cannon v. Macon County,* 1 F.3d 1558, 1563 (11th Cir. 1993)). And, "[w]hen dealing with limited seizures not subject to the probable-cause requirement, a seizure that is reasonable at its inception may quickly become *unreasonable* if it extends beyond its unique justification." *Croom v. Balkwill,* 645 F.3d 1240, 1250 (11th Cir. 2011).

Probable cause and reasonable suspicion are also both fact-intensive concepts highly sensitive to context. *See Ornelas v. United States,* 517 U.S. 690, 696 (1996) ("The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.").

Here, Plaintiff appears to allege that he was subject to an "unreasonable seizure," that, to the extent he was arrested, it was "without probable cause," and that any probable cause dissipated long before he was released. Considering that Plaintiff never alleges that he was formally arrested, his

15

claim could also be construed as an allegation that Defendants lacked even reasonable suspicion to detain him.

But Plaintiff has not provided a sufficient basis of alleged facts to support either version of a Fourth Amendment claim. The very fact that Plaintiff has not made clear whether he alleges an unreasonable arrest without probable cause, or an unreasonable seizure without reasonable suspicion, illustrates one of the challenges in interpreting his pleading. Further, as discussed above, his arrest or seizure may have been unreasonable if it were based solely on an unreliable and equivocal witness statement. However, Plaintiff suggests that the relevant statement was taken after his seizure. Because Plaintiff does not address the initial cause of his detention—that is, "the events which occurred leading up to the stop," *Ornelas*, 517 U.S. at 696—he does not plead an unreasonable seizure or false imprisonment claim against either Defendant.

### iii. Under color of state law

Third, Count III fails to state a claim against Wal-Mart for the additional reason that Wal-Mart is not a state actor.

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he [ ] was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs.*

16

*Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Courts use "three primary tests" to determine whether the conduct of a private party can be considered state action: "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." *Natl. Broad. Co., Inc. v. Commun. Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988). If the Court determines that Defendants were not acting under color of state law, the section 1983 claim must fail as a matter of law. 42 U.S.C. § 1983.

Here, Wal-Mart's employees are not state employees or representatives, and the Second Amended Complaint does not show that this is one of the "rare circumstances" in which a private party can be considered a state actor. *See* Doc. 3 pp. 8-9 (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)). It does not suggest that Wal-Mart was performing a traditionally "public function" nor that its conduct was a result of "state compulsion." So, Plaintiff must show that Wal-Mart undertook "joint action" with state actors. *See Natl. Broad. Co.* 860 F.2d at 1026 (explaining the three ways to plead 1983 liability against a private party). The "joint action" test—also referred to as the "nexus" test—is "heavily fact specific," and it can itself be further divided into three categories of relationships: a "conspiracy" between private parties and state actors, a "state-prompted partnership" between itself and a non-state entity,

17

or private party "individual-prompted use of state authority." *Charles v. Johnson*, 18 F.4th 686, 697 (11th Cir. 2021).

Generally, private security guards are not considered state actors when they do not assert the authority of the state. *Williams v. Town of White Hall, Alabama*, 450 F. Supp. 2d 1300, 1307-08 (M.D. Ala. 2006); *see also Desravines v. Orange Cnty. Sheriff's Off.*, No. 6:10-CV-1773-ORL, 2010 WL 5491235, at *5 (M.D. Fla. Dec. 15, 2010) (finding that a plaintiff failed to allege sufficient facts to show that Wal-Mart security officers who "arrested" and detained plaintiff were state actors subject to liability under section 1983), *report and recommendation adopted*, No. 6:10-CV-1773-ORL-31, 2011 WL 13660 (M.D. Fla. Jan. 4, 2011); *Harris v. Sec. Co. of 1370 Sixth Ave.*, No. 94 CIV. 2599 (JGK), 1996 WL 556927, at *2 (S.D.N.Y. Oct. 1, 1996) ("As a general rule, it is well settled that the acts of a private security guard hired by a store do not constitute state action under § 1983."). And, "[a] private party does not act under color of state law merely by calling upon official state authority when he does not also join in the exercise thereof." *Dye v. Radcliff*, 174 F. App'x 480, 483 (11th Cir. 2006).

As discussed above, Plaintiff does not explain what actions the Wal-Mart employees—as opposed to the Winter Haven police officers—took, and thus does not state facts demonstrating that their actions clothed them in the color

18

of state law. Count III, therefore, fails against Wal-Mart for this additional and independent reason.

Plaintiff does not plead facts sufficient to demonstrate an unlawful seizure or detention, or that Wal-Mart is subject to a section 1983 claim in this context.

      d.  <u>Plaintiff does not state a negligence claim (Count IV).</u>

Count IV accuses Wal-Mart of negligence for its failure to adhere to "law and internal policies," including by, "Detaining customers without probable cause; Profiling based on race, class, or homelessness; [and] Communicating false information to third parties."[3] Wal-Mart argues that this claim must be dismissed because it identifies no legally cognizable duty to Plaintiff.

To plead a claim of negligence under Florida law, a plaintiff "must allege four elements: a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (citing *Curd v.*

---

[3] Plaintiff cites no Wal-Mart policy and lists no example of violating a policy, so the Court does not analyze whether the store had any duty to Plaintiff under its own policies. Even if he had identified a specific policy, though, its relevance to the negligence inquiry would be limited. *See Johnson v. Wal-Mart Stores E., LP,* 389 So. 3d 705, 712 (Fla. 5th DCA 2024) (acknowledging that "internal policies might sometimes be relevant (and therefore admissible) when a jury decides compliance with the proper standard of care in a negligence case," but noting that, "absent some evidence to establish that the internal policies themselves, or some specific portion thereof, represent only what is reasonably foreseeable and not what is merely possible, a party's internal rule seems to be of little value to our legal duty analysis*"), review denied*, No. SC2024-1108, 2024 WL 4370566 (Fla. Oct. 2, 2024).

*Mosaic Fertilizer, L.L.C.*, 39 So.3d 1216, 1227 (Fla. 2010)). At the pleading stage, it is most essential that a plaintiff allege the existence of a duty owed to him by the defendant. *See id.* ("Establishing the existence of a duty under Florida's negligence law is a minimum threshold legal requirement that opens the courthouse doors.") (cleaned up) (quoting *Williams v. Davis*, 974 So.2d 1052, 1057 n. 2 (Fla. 2007)).

"Florida law recognizes the following four sources of duty: (1) statutes or regulations; (2) common law interpretations of those statutes or regulations; (3) other sources in the common law; and (4) the general facts of the case." *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015). As to statute-based duties, "A statute creates a duty of care upon one whose behavior is the subject of the statute to a person who is in the class designed to be protected by the statute, and such duty will support a finding of liability for negligence when the injury suffered by a person in the protected class is that which the statute was designed to prevent." *Burley v. Vill. S., Inc.*, 407 So. 3d 572, 577 (Fla. 3d DCA 2025) (alterations adopted) (quoting *Palmer v. Shearson Lehman Hutton, Inc.*, 622 So. 2d 1085, 1090 (Fla. 1st DCA 1993)).

Even assuming Wal-Mart had a duty to Plaintiff to refrain from: (1) detaining him without probable cause, (2) not "profiling" him based on race, class, or housing status, and (3) not communicating false information to third

20

parties, Plaintiff fails to plead facts showing that Wal-Mart breached those duties.

As discussed above, Plaintiff identifies neither who detained him nor the basis on which that person did so. He does not plead facts showing he was a member of any protected class or that Wal-Mart employees took any adverse actions against him on that basis. And he does not identify any Wal-Mart employee's false communications.

Thus, Plaintiff does not plead facts supporting his negligence claim against Wal-Mart.

e.   Plaintiff does not plead a *Monell* claim (Count V).

In Count V, Plaintiff seeks to hold Winter Haven accountable, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for its officers' alleged false imprisonment.

To state a Section 1983 claim against a municipality, a plaintiff must allege a specific policy, practice, or custom that was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694. Absent a policy, a plaintiff is required to allege a widespread custom or practice, and a single incident of unconstitutional activity is insufficient. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011).

First, this count fails, because Plaintiff did not plead facts showing the underlying constitutional violation.

21

Second, even had he demonstrated the unconstitutional violation, Plaintiff fails to plead facts showing that Winter Haven had a custom, policy, or practice animating the violation. Plaintiff broadly alleges that Winter Haven failed to train and supervise officers on lawful detention and probable cause; enforce unidentified policies on confidential information; investigate citizen complaints; and ratify citizen complaints. Doc. 33 p. 7.

But these conclusory allegations, without factual support, are not enough. True, the Supreme Court has rejected the idea that there is any "heightened pleading standard" for 1983 claims alleging municipal liability. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). But, in the wake of *Twombly* and *Iqbal*, such claims, like all claims, "require[] more than labels and conclusions," *Twombly*, 550 U.S. at 555, and must be supported by more than "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (cleaned up).

Applying these principles, a recent Eleventh Circuit opinion upheld a district court's dismissal of a plaintiff's *Monell* claim against Miami Dade County, because the plaintiff had only "alleged in conclusory fashion" the existence of a pattern of similar constitutional violations, without providing "any additional details [of] the circumstances of past incidents*." Plowright v. Miami Dade Cnty.*, 102 F.4th 1358 (11th Cir. 2024). In *Plowright*, the plaintiff alleged in his complaint "that the county 'had a county wide custom of shooting

22

. . . dogs" and this custom was the moving force behind the shooting of the plaintiff's dog. *Id.* at 1361, 1370. Noting that the plaintiff's "conclusory" allegation did not, for example, provide enough detail about other instances to show whether "the dogs in question posed an imminent threat," the Eleventh Circuit held that the plaintiff had "failed to allege facts plausibly indicating that there was such a custom or, even if there was, that the custom constituted deliberate indifference to his constitutional rights." *Id.* at 1370 (alteration adopted) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

Here, Plaintiff's allegations that Winter Haven has a routine or custom of similar constitutional violations, and that Winter Haven has failed to train its officers to refrain from such violations, are similarly conclusory and sparse. Of course, at the pleading stage, Plaintiff need not provide *proof* of an unconstitutional policy or custom to proceed with a *Monell* claim, but he does need to provide "factual enhancement" for his claim, *see Iqbal*, 556 U.S. at 678, such as references to specific instances of similar conduct by Winter Haven officers. In the absence of any such examples, Plaintiff's *Monell* claim does not survive Winter Haven's motion to dismiss. *See Lordeus v. Miami-Dade Cnty.*, 263 F. Supp. 3d 1307 (S.D. Fla. 2017) (dismissing, with leave to amend, a plaintiff's *Monell* claim which was based only on "a conclusory allegation that the County 'had a policy, custom or practice of allowing its police officers to use excessive force . . .'").

23

f.  <u>Plaintiff cannot seek punitive damages against Winter Haven.</u>

Winter Haven moves to dismiss Plaintiff's requests for punitive damages against it. Plaintiff offers no argument to the contrary but asks that the underlying claims not be dismissed. Doc. 56 p. 4.

As to Plaintiff's federal claims against Winter Haven, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As to his state claims, Florida law makes cities liable "for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages." Fla. Stat. 768.28(5)(a).

Thus, any future repleading may not seek punitive damages against Winter Haven.

## IV.  Conclusion

For the reasons stated above, Plaintiff's Second Amended Complaint is dismissed without prejudice. However, Plaintiff requests that he be given leave to amend. Such leave should be freely given. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff shall have until May 11, 2026 to file a Third Amended Complaint that remedies the problems identified in this order. Failure to timely file a Third Amended Complaint, or to fix the errors identified here, will likely result in dismissal of the case with prejudice.

To the extent Plaintiff has questions about this Order, he may find it helpful to make an appointment with Federal Bar Association's Legal Information Program, which provides free consultations to people litigating cases in federal court without lawyers. To set up an appointment, people can visit the Clerk's office, or call the office at 813-301-5400.

ORDERED on April 24, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge